UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
COLETTE D. RAGIN,

      Plaintiff

v.                                       **COMPLAINT**

RIVERBAY CORPORATION,

      Defendant.
-------------------------------------------------------x

By and through her counsel, plaintiff alleges as against defendant:

## I. PARTIES

1. Plaintiff, Colette Ragin, is a female, disabled United States citizen of legal age. She resides in the County of Orange, within this judicial district.

2. Defendant, Riverbay Corporation, is a housing corporation organized pursuant to the laws of the State of New York. It is located and conducts business within this district, as it has at all times relevant to this matter.

## II. JURISIDICTION

3. Defendant employs more than 25 persons and has done so at all relevant times.

4. Plaintiff timely filed a charge of discrimination based upon gender, disability and retaliation with the EEOC. Exhibit 1.

5. Within the last ninety days, the EEOC issued a right to sue letter enabling plaintiff to initiate this action. Exhibit 2.

6. Accordingly, this Honorable Court has jurisdiction pursuant to 42 U.S.C. section 2000e-5, et seq, 28 U.S.C. sections 1331 and 1343 and 42 U.S.C. section 1988.

## III. FACTUAL ALLEGATIONS

7. Effective September 10, 2008, without knowledge of plaintiff's disability, defendant hired her as Director of Human Resources.

8. When hired, plaintiff had three master's degrees and significant corporate and public sector experience as a director and as a lieutenant in the Air Force.

Case 7:17-cv-03832-NSR   Document 1   Filed 05/22/17   Page 2 of 7

9. Unbeknownst to plaintiff, her starting salary was the same as that provided the male director of technology who had a high school diploma.

10. During her seven years of employment, plaintiff performed the essential functions of her job diligently and successfully and received satisfactory performance evaluations.

11. In or about 2010, plaintiff advised defendant that she had a neurological disorder, MS, which caused her leg cramps, fatigue, insomnia and prevented her from walking in a manner substantially similar to the capacity of a non-disabled person.

12. As a consequences of her disability, Plaintiff sought reasonable accommodations, including a shortened work week and an adjusted daily schedule to reduce the stress of her long commute to work.

13. Upon plaintiff's requests, defendant refused to provide these reasonable accommodations, demanded multiple medical notes, required plaintiff to meet with its General Counsel to discuss her condition and ultimately caused her to hire counsel and file an EEOC charge in October 2012 before acceding reluctantly to the requested accommodations.

14. While her request for reasonable accommodations was pending, defendant stripped plaintiff of the duties associated with and the title of Director of Human Resources making her Director of the Office of Organizational Development and Training, a previously non-existent title and department and assigning her busy work.

15. Defendant directed plaintiff to report to Ron Caesar, Director of Risk Management; he had no credentials or background in Human Resources.

16. The extended process of seeking reasonable accommodation enervated plaintiff and was dissimilar to the way in which defendant responded to requests for reasonable accommodation from males, including but not limited to, Donovan Plummer, the Director of Buildings and Grounds, who it permitted frequent breaks in his office and allowed to absent himself from work two half days/week due to undocumented medical conditions, and Alan Poretsky, who it allowed to work part-time on Fridays to accommodate his religious observance.

17. In the summer of 2014, plaintiff was appointed [along with two males] to serve as a "Knowledge Assistant," tasked with helping the defendant's Board of Directors gain greater understanding of the specific functions of the company they directed and its daily interaction with the managing agent charged with the day-to-day operations of Coop City.

18. Immediately following her appointment as a knowledge assistant, a former General Manager distributed to each member of defendant's Board of Directors a copy of a charge she filed with the EEOC in 2012.

19. This charge documented plaintiff's disability and alleged that defendant had engaged in disability discrimination.

20. In 2013, defendant's counsel called plaintiff to his office and asked her if intended to file a lawsuit following her receipt of a right to sue letter from the EEOC.

21. Plaintiff advised that she did not intend to do so and wanted to add value to the company as HR Director.

22. In August 2014, the Board of Directors voted to pay the three Knowledge Assistants a 10% stipend for the performance of this function.

23. Board President Taylor signed off on stipends for the two male Knowledge Assistants, Merola and Ellison, but did for plaintiff.

24. In September 2014, defendant reinstated plaintiff to the position of Director of Human Resources.

25. Between August 2014 and May 2015, despite plaintiff's accommodations which permitted her to not work on Wednesdays, defendant directed her to attend and make presentations at Board meetings, typically held on Wednesdays and several directors required her to work on weekends and while on vacation.

26. These requirements caused plaintiff additional fatigue and violated her reasonable accommodation.

27. In November 2014, the Board named Ellison and Merola co-General Managers.

28. At the time, Ellison was fully familiar with plaintiff's disability and the accommodations provided her.

29. In his new position, Ellison routinely held high level staff meetings at times he knew plaintiff would be unavailable based upon her reasonable accommodations.

30. At these meetings, Ellison and her deputy, Merola, would receive reports from plaintiff's deputy and give one of her subordinates assignments to complete without communicating with her.

31. In November 2014, defendant provided a substantial pay increment to David Stone for receiving his boiler license.

32. Ellison and Merola denied plaintiff a pay raise when she received national certification as a Professional in Human Resources.

33. In mid-December 2014, defendant's Board President, Taylor, wrote to three male directors/assistant directors - Stone, Keenan and Reardon - concerning a myriad of safety violations, concluding that the noted conditions presented "clear exposure to liability" for defendant and cost defendant substantial monies.

34. However, these males received no discipline and the Board President directed plaintiff not to even place the memorandum sent to these men in their personnel files.

35. In December 2014, occasioned by the filing of a lawsuit claiming under-payment, defendant hired Smith, Buss & Jacobs to perform a wage and hour audit.

36. Michael Mauro, Esq., was tasked with leading the audit.

37. Between February and April 2015, in conducting the audit, Mauro interviewed Riverbay employees, often accompanied by plaintiff and her assistant, Kraigh Thomas.

38. However, during the same time period, defendant excluded plaintiff from many meetings concerning litigation strategy.

39. In April 2015, Mauro provided Ellison, Merola and Munns his report relating to how Riverbay classified its management staff; plaintiff was not included in the distribution of the report and payroll manager Kenneth Duchnowski was provided the report by Munns.

40. Presentation of this report occasioned internal dispute/discussion about how to alter the classification process.

41. However, managerial dysfunction impeded any resolution of this issue.

42. By June 2015, without plaintiff's participation, defendant's managers and counsel determined the amounts which were to be paid to persons for FLSA violations.

43. Defendant tendered checks based on re-classifications of its employees; plaintiff was not provided a list of the employees being compensated and had no knowledge of the sums each received.

44. The quantum of the checks was approved by Ellison, Merola and Munns.

45. After these checks were disseminated, Munns told plaintiff that the defendant had made a grave error in their dissemination.

46. Munns directed plaintiff to write each employee who was overpaid and set up a meeting at which she was directed to try to gain voluntary recoupment of said funds.

47. Plaintiff and Munns communicated with employees and arranged meetings with them to discuss recoupment.

48. The result of these meetings was negative as employees expressed anger at the suggestion of repayment and some threatened lawsuits.

49. On August 27, 2015, defendant terminated plaintiff's employment.

50. The President of defendant's Board of Directors, Cleve Taylor, told Othelia Jones that plaintiff was terminated because she was not a team player.

51. Noel Ellison, defendant's interim General Manager, told plaintiff that she was terminated because she was held responsible for improperly classified as "non-exempt" employees who should have been classified as "exempt," causing Riverbay to lose some $96,483.

52. Any error in classification and/or compensation was caused by a male the serving as outside counsel to the defendant for the FLSA matter and by payroll.

53. Contrary to the shifting, pretextual explanations for her termination, plaintiff repeatedly extended herself as a team player for defendant and was not responsible for determining or approving the classifications of employees or the quantum of FLSA compensation nor, more generally, for defendant's payroll functions.

54. Meanwhile, the same summer, a male, Donavan Plummer, defendant's director of Buildings and Grounds, permitted a seasonal worker to operate a lawn mower; the young man severed three fingers on the lawn mower blade. Allowing such an operation contravened defendant's rules, but Plummer, a male, sustained no discipline.

55. The prior year, Anthony Rasulo, defendant's Director Construction, a non-disabled male, violated OSHA safety rules, failed to insure completion of critical repairs required by a HUD/Wells Fargo loan and was not disciplined.

56. The same year, a non-disabled male, Edgar Perez, Director of Restoration, was not disciplined though he signed off on payment for painting which Atlas, the contractor, had not fully completed even after Board President Taylor and Munns conducted an investigation which revealed this corrupt practice.

57. In 2015, a third non-disabled, male manager, Mark Gordon, then the manager of defendant's extermination department, violated extermination codes governing the removal/disposal of affected animals.

58. Plaintiff and Thomas investigated this behavior and allegations that Gordon had thrown an object at the subordinate who complained about him and directed profanity toward this employee.

59. During the investigation, Gordon conceded that he had behaved as accused.

60. Plaintiff recommended his termination in part based on the company's zero policy for workplace violence.

61. Ellison, Merola and Munns overrode her recommendation and refused to discipline Gordon.

62. Upon her termination, plaintiff was provided no severance pay and two days of medical coverage, though defendant knew she was reliant on expensive medications due to her disability.

63. Between September and November 2015, defendant constructively replaced plaintiff with a non-disabled male, Kraigh Thomas, who had less than one year employment and no college degree, bypassing a female, Trenise Myrie, a long time company employee who had a college degree and a para-legal certification.

64. Defendant routinely discriminated against plaintiff in the terms and conditions of employment; for example, after seven years of employment, it provided her three weeks paid vacation while, in 2015, it hired males in males, i.e., Joseph Boiko, Jose Mendez and Kevin Sherard, in 2015 and provided each three weeks paid vacation upon hire.

65. Likewise, in September 2015, the month following plaintiff's summary termination, Riverbay paid out a substantial settlement in the FMLA case occasioned by the failure of male managers, namely Merola and Duchnowski, to properly pay overtime to union workers.

66. Defendant did not discipline the non-disabled, male managers responsible for this failure.

67. By and through defendant's discriminatory acts and omissions, plaintiff has been caused emotional distress and mental anguish, loss of salary and benefits and humiliation.

## IV. CAUSES OF ACTION

68. Plaintiff incorporates paras. 1-67 as if fully incorporated herein.

69. Defendant violated Title VII of the Civil Rights Act of 1964, as amended, when it terminated plaintiff on the basis of her gender.

70. Defendant violated the Americans with Disabilities Act when it terminated her employment on the basis of her disability.

71. Defendant violated section 296 of the Executive Law of the State of New York when it terminated plaintiff on the basis of her gender.

72. Defendant violated section 296 of the Executive Law of the State of New York when it terminated plaintiff on the basis of her disability.

## V. PRAYER FOR RELIEF

**WHEREFORE**, plaintiff that this Honorable Court accept jurisdiction over his matter, empanel a jury to hear and decide the matter, award to plaintiff and against defendant compensatory and punitive damages as permitted by and determined by said jury, order defendant to pay plaintiff the reasonable attorneys' fees and costs incurred during this litigation and enter any other order in the interests of justice and equity.

Respectfully submitted,

                                                MICHAEL H. SUSSMAN [3497]

SUSSMAN & ASSOCIATES
PO BOX 1005
GOSHEN, NY 10924
(845)-294-3991

Counsel for Plaintiff Ragin

Dated: 5/23/17

7