MANDATE

20-2233-cv
*Ragin v. Riverbay Corp.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of September, two thousand twenty-one.

PRESENT:
    JOHN M. WALKER, JR.,
    JOSEPH F. BIANCO,
    STEVEN J. MENASHI,
        *Circuit Judges*.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 28, 2021

---

Colette D. Ragin,

    *Plaintiff-Appellant*,

v.                             20-2233-cv

Riverbay Corporation,

    *Defendant-Appellee*.

---

FOR PLAINTIFF-APPELLANT:     MICHAEL H. SUSSMAN, Sussman & Associates, Goshen, NY.

FOR DEFENDANT-APPELLEE:     JOSEPH A. SACCOMANO, JR. (Isaac J. Burker, *on the brief*), Jackson Lewis P.C., White Plains, NY.

Appeal from an order and judgment of the United States District Court for the Southern District of New York (Román, *J.*).

MANDATE ISSUED ON 09/28/2021

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order and judgment of the district court are **AFFIRMED**.

Plaintiff-Appellant Colette Ragin, the former Director of Human Resources for Defendant-Appellee Riverbay Corporation ("Riverbay"), appeals from the June 22, 2020 order and June 24, 2020 judgment of the district court, granting Riverbay's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Specifically, she challenges the dismissal of her sex- and disability-based discrimination claims, which she brought against Riverbay under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 290 *et seq*. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

Ragin alleges that she was terminated in 2015 after seven years of employment because of her sex and her disability (as she suffers from multiple sclerosis ("MS")). The lawsuit focuses on Ragin's performance in connection with an audit conducted by Riverbay, from 2014 through 2015, led by outside counsel Michael Mauro, regarding claims of unpaid overtime from certain employees. The uncontroverted facts established that, in her capacity as Director of Human Resources, Ragin assisted Mauro in the audit, including by preparing a spreadsheet for Mauro with employee information and scheduling and then participating in interviews with Riverbay employees to learn about what positions were exempt from the requirements for overtime pay. On June 9, 2015, Mauro emailed Ragin and her assistant Kreigh Thomas, who would occasionally join Ragin and Mauro in the employee interviews, stating that he was changing his

2

recommendation for the status of six employees from being non-exempt from overtime pay to exempt. Ragin took no action in relation to this email.

On June 25, 2015, a memo circulated in Ragin's name to hourly employees informing them of a "one-time disbursement of additional compensation" for unpaid overtime pay. Joint App'x at 359. The six employees that Mauro had informed Ragin were to be considered exempt in the June 9, 2015 email were incorrectly included in the disbursement and were issued checks totaling $96,483. When the mistake was discovered a few weeks later, Riverbay sought to recoup the money. Ragin subsequently participated in meetings with the six employees explaining the error and requesting return of the money, but Riverbay was able to only partially recover the wrongly disbursed funds. On August 27, 2015, Ragin received a termination notice stating the reason for her dismissal was her "failure to follow the written directives from outside counsel regarding the reclassification of six [ ] Riverbay employees . . . [such that they] were issued back pay checks on June 25, 2015 in the aggregate amount of . . . $96,483." Joint App'x at 218.

## I. Standard of Review

We review a district court's grant of summary judgment *de novo*. *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court considering a summary judgment motion construes the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in her favor. *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).

We analyze Ragin's employment discrimination claims according to the familiar burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Walsh*

*v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016) (applying *McDonnell Douglas* framework to Title VII and New York state sex discrimination claims); *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999) (same for ADA claims); *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004) (same for New York state disability discrimination claims). Under this framework, the plaintiff must first "establish a *prima facie* case [of discrimination]; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231 (2d Cir. 2015) (internal quotation marks omitted).

As an initial matter, the district court held that Ragin established a *prima facie* case of discrimination on each claim. Riverbay, although agreeing with the district court's ultimate conclusions, argues that a *prima facie* case was not established and that the district court erred in this regard. However, we need not address this argument because we conclude that, even assuming *arguendo* that the *prima facie* case was established, the district court correctly held that Ragin failed to produce sufficient evidence from which a rational jury could find that the legitimate, non-discriminatory reason proffered by Riverbay for her termination was a pretext for discrimination or that discrimination was a motivating factor in the termination decision.

**I. Sex Discrimination Claims**

Under Title VII, it is unlawful for employers to, among other things, "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

4

terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).[1]

At the time Ragin was terminated, her supervisor explained that the reason for her dismissal was that she "failed to follow up on the information from Mike Mauro regarding the employees that we had to pay" such that she "cost[] the corporation $90,000." Joint App'x at 534. Ragin claims that a rational jury could determine the reason for her termination was pretextual because she "had no responsibility to do anything with the informational email she received on June 9, 2015 from Mauro"; that "Mauro communicated directly with payroll"; and "Mauro's recommendations were not always followed . . . [so] Ragin had no reason to believe that those contained in his June 9 email had any more certain status in setting company policy." Appellant's Br. at 20. Ragin further asserts that no one blamed her "for the mix-up . . . let alone recommended her termination," that her supervisor Noel Ellison "falsely claimed" others supported her termination, and that Ellison did not know about the June 9, 2015 email at the time of her termination and therefore terminated her "for other reasons." *Id.* We conclude that the district court correctly determined that no rational jury could find that the termination decision was based, in any part, on her sex.

Although Ragin seeks to create issues of fact surrounding various aspects of the audit and the termination decision, it is uncontroverted that: (1) Ragin (the Director of Human Resources)

---

[1] Under the NYSHRL, employers may not discriminate "because of an individual's . . . sex . . ." "to discharge from employment such individual." N.Y. Exec. Law § 296(1)(a). Federal and New York state law have similar standards for sex discrimination by an employer. *See Walsh*, 828 F.3d at 74-75; *see also Matya v. United Refin. Co.*, 323 F. App'x 65, 67 (2d Cir. 2009) ("Claims under the New York Human Rights Law are analyzed using the same framework as Title VII claims."). Thus, we consider both Ragin's federal and state law sex discrimination claims together.

5

worked with Mauro (the auditor) on the reclassification project, including attending employee interviews, providing Mauro with a spreadsheet containing employee information, and clarifying information about employees after the interviews; (2) only Ragin and her assistant were on the June 9, 2015 email from Mauro, stating that he was changing his recommendation for the status of six employees from being non-exempt from overtime pay to exempt; and (3) Ragin nonetheless failed to take any action to confirm, or even inquire about, the correct status of those employees either with management, payroll, or Mauro, before she permitted check memoranda to be incorrectly issued in her name as the Director of Human Resources. As the district court explained, "[e]ven if Plaintiff did view the June 9th email as purely informational, and not requiring immediate action on her part, a basic awareness of the email's contents would have alerted her to the mistakes in the check memoranda and her subsequent internal emails to Riverbay Department heads." Special App'x at 14. We agree with the district court that, in light of these and the other uncontroverted facts in the record, none of the factual issues and arguments raised by Ragin would allow a rational jury to conclude that the reason for the termination decision was pretextual.

More importantly, even if the reason for the termination decision could be viewed as unfair under the circumstances or not fully supported by the record, there would be no basis for a rational jury to conclude that it was motivated, in any part, by sex discrimination. We are unpersuaded by Ragin's attempt to establish such a motivation, or discriminatory pretext, with a demonstration that "similarly situated employees" "received more favorable treatment." *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000). In particular, Ragin compares her treatment to that of four male employees who she alleges "engaged in serious misconduct" and were not terminated. Appellant's Br. at 42. However, we agree with the district court that no reasonable fact-finder

6

could conclude that Ragin, the Director of Human Resources, who failed to act on an email related to a project with which she was involved and instead allowed tens of thousands of dollars in funds to be distributed in her name, was "similarly situated in all material respects" to the above-referenced male employees based on the information provided about their respective circumstances. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997); *accord McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("[E]mployees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.").

Apart from this unsuccessful attempt to find similarly-situated comparators, there is a complete absence of evidence in the record to support her claims of sex discrimination. Therefore, the district court correctly concluded that, "even if reasonable minds might disagree as to whether termination was the proper punishment for Plaintiff's failure to, at the very least, follow up on the June 9th email before allowing check memoranda to be distributed in her name, there is no basis for finding that such failure was mere pretext for sex discrimination." Special App'x at 15. In other words, Ragin failed to "show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Walsh*, 828 F.3d at 75 (internal quotation marks omitted). Accordingly, the district court properly granted summary judgment to Riverbay on the sex discrimination claims.

## II. Disability Discrimination Claims

Under the ADA, it is unlawful for employers to "discriminate against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees." 42 U.S.C. § 12112(a).

7

Simply put, Ragin must show that disability-based discrimination was the "but-for cause" of her termination. *Natofsky v. City of New York*, 921 F.3d 337, 350 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2668 (2020).[2]

As with her sex discrimination claims, Ragin's disability claims are analyzed under the burden-shifting framework set forth in *McDonnell-Douglas*, *see Heyman*, 198 F.3d at 72; *Rodal*, 369 F.3d at 118, and they fail for the same reasons as her sex discrimination claims. In particular, Ragin is unable to rebut the uncontroverted facts surrounding her termination with evidence that would support a rational inference of disability discrimination. To the contrary, the record shows that Ragin was twice provided with requested disability accommodations, and about one year before her termination, she was given a $31,000 salary increase. In sum, even construing the evidence in the record most favorably to Ragin, no rational jury could find that Riverbay's decision to terminate her was motivated, in whole or in part, by her disability. Therefore, the district court properly granted summary judgment on the disability-based discrimination claims.

---

[2] It is similarly unlawful for employers under New York state law to discriminate "because of an individual's . . . disability." N.Y. Exec. Law § 296(1)(a). Here, we evaluate the state law disability claim co-extensively with the federal claim because "the scope of the disability discrimination provisions of [the NYSHRL] are similar to those of the [ADA]." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008) (internal quotation marks omitted). In doing so, we note that we have not yet determined whether "but for" causation is the proper standard for claims of disability discrimination under the NYSHRL or whether, for instance, Title VII's lower "mixed-motive" test would apply instead, and we decline to do so today. Under either standard, Ragin is unable to demonstrate an inference of disability-based discrimination to support a finding of pretext.

8

        \*        \*        \*

We have considered all of Ragin's remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the order and judgment of the district court.

        FOR THE COURT:
        Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit